UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAM A. ADAMS and ERIKA M. ADAMS, husband and wife; HOLLYSTONE HOLDINGS, INC., a Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CORR CRONIN MICHELSON BAUMGARDNER FOGG AND MOORE PLLP, a Washington limited liability partnership; and GUY MICHELSON,<br><br>Defendants. | C18-1237 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment, docket no. 20. Having reviewed all papers filed in support of, and in opposition to, the motions,[1] the Court enters the following order granting summary judgment.

**<u>Background</u>**

Plaintiffs Sam and Erika Adams bring this legal malpractice action against their former attorneys, Corr Cronin LLP and Guy Michelson (together, "Corr Cronin").

---

[1] This Order also resolves Defendants' Motion for Judicial Notice, docket no. 24, Plaintiffs' unopposed Request for Judicial Notice, docket no. 30, Plaintiffs' request to strike material contained in Defendants' reply, docket no. 35, and Defendants' second motion for summary judgment, docket no. 37.

ORDER - 1

Complaint, docket no. 1-1, at 4-13. In 2012, Sam Adams acquired Hollystone Holdings, Inc. ("Hollystone"), which owned several health clubs in Washington and Oregon. Adams obtained financing for subsequent improvements from Allstate Financial Group, Inc. ("Allstate"), which was owned by John Michael and Barratt Leasing, Inc. ("Barratt"). *See* Declaration of Keith D. Petrak ("Petrak Decl."), docket no. 21, Exs. 13-17. Hollystone and Allstate entered into an arrangement where Allstate would collect payments of club members' monthly fees, from which Allstate would deduct a percentage to repay amounts Hollystone owed Allstate. *Id.*, Exs. 13, 15. In December 2013, Sam Adams entered into two memorandum agreements with Allstate and Barratt, assigning several of the health clubs to them in exchange for unpaid debts. *Id.*, Exs. 22, 23.

Weeks later, in an engagement letter dated January 10, 2014, Corr Cronin undertook representation of Hollystone and the Adamses in connection with claims against Allstate and Barratt. *Id.*, Ex. 21. In that engagement letter, Corr Cronin specified that it was "not undertaking a general representation of you, but will be representing you only as to the above-referenced action [i.e., *Hollystone, et al. v. Allstate Financial Group, et al.*]." *Id.* Thereafter, Corr Cronin filed a complaint in state court on January 16, 2014 on behalf of Hollystone and several subsidiary health clubs against Allstate and Barratt alleging breach of contract, accounting, and rescission of the December 2013 agreements. *Id.*, Ex. 1.

Corr Cronin served written discovery requests on Allstate and its bank in the state court action. *Id.*, Exs. 30, 103, 104. However, prior to receiving responses to those requests, the plaintiffs in the state court action elected to settle the case. *Id.*, Ex. 50.

Plaintiffs in the present action—Sam and Erika Adams, who controlled the plaintiff companies in the earlier state court action—allege that Corr Cronin counseled them that settlement was the best option, that "[w]e can't prove that he's stealing money" and that the Adamses were "not going to get [a] better" result. Petrak Decl., docket no. 21, Ex. A (Transcript of Deposition of Sam Adams), at 43. The parties finalized the settlement in February 2014 which yielded more than $1,000,000 to plaintiffs in cash and debt forgiveness, (*id.*, Ex. 50), and the matter was dismissed on March 28, 2014 (*id.*, Ex. 99).[2] Corr Cronin billed Plaintiffs for work through July 2, 2014, after which Corr Cronin performed no further work for Plaintiffs or their companies. *See id.*, Ex. 20.

In April of 2014, shortly after the state court proceeding had been settled and dismissed, the Washington Department of Labor and Industries fined Sam Adams for wage payment violations, (*id.*, Ex. 59), and the Attorney General's Office notified Adams that he was the target of a related criminal investigation, (*id.*, Ex. 55). Plaintiffs filed for bankruptcy on June 28, 2014. Declaration of Brian J. Waid, docket no. 28, Ex. D, at 2 (docket entry no. 1 for Chapter 11 Voluntary Petition). Despite the earlier settlement of Hollystone's claims against Allstate and Barratt, Plaintiffs' bankruptcy schedules

---

[2] Allstate filed for bankruptcy on January 5, 2015, (*id.*, Exs. O, P), and Barratt was placed in receivership on March 24, 2015, (*id.*, Exs. R, S). Defendants' expert suggests that even if Plaintiffs had obtained a judgment against Allstate and/or Barratt, that judgment would have been uncollectable. *See* Declaration of Lorraine Barrick, docket no. 23, ¶¶ 8-11.

identified potential business tort claims against Allstate and Barratt. *See, e.g.*, *id.*, Ex. 60, at 8.

On February 4, 2015, the State of Washington initiated criminal proceedings against Plaintiff Sam Adams. *Id.*, Ex. BB. Adams retained David Smith to represent him in the criminal matter. *Id.*, Ex. 74. One potential defense in the criminal proceeding involved proving that Allstate and Barratt had defrauded Hollystone and its health clubs, resulting in underpayment of wages. To that end, Smith counseled Plaintiffs to retain a forensic accountant and to "move quickly" if they wanted to "undo the Hollystone v AFG/Barr[a]tt settlement." *Id.*, Ex. 77 at 2. Plaintiffs did not contact a forensic accountant until November 2016. Within six months of that engagement, the accountant produced two reports that purported to prove that Allstate and Barratt enacted a "scheme to defraud" Hollystone and the subsidiary clubs. *Id.*, Exs. 84, 85.

Plaintiffs filed their Complaint against Corr Cronin and Guy Michelson on July 6, 2018. *See* Record on Appeal, docket no. 1-1, at 2. The complaint contains a single claim against Defendants for legal malpractice, alleging that Defendants failed to conduct a sufficient investigation into potential fraud by Allstate and Barratt, improperly counseled Plaintiffs to settle their lawsuit against Allstate and Barratt, and exposed Plaintiffs to additional civil and criminal liability by failing to uncover Allstate and Barratt's fraud.

After filing their complaint, Plaintiffs moved to withdraw the reference on August 22, 2018. *See* docket no. 1. Defendants then moved for summary judgment arguing that Plaintiffs' claims are untimely and barred by the uncollectability defense. *See* Defs.' Mot. for Summary Judgment, docket no. 20.

**Discussion**

**I.     Standard of Review**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)). When the record, taken as a whole, could not, however, lead a rational trier of fact to find for the non-moving party on matters as to which such party will bear the burden of proof at trial, summary judgment is warranted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322.

## II. Statute of Limitations

Legal malpractice claims are subject to a three-year statute of limitations under Washington law, and the period begins when a party "has a right to seek legal relief." *See Cawdrey v. Hanson Baker Ludlow Drumheller, P.S.*, 129 Wn. App. 810, 816, 120 P.3d 605 (2005).

This action was commenced on July 6, 2018. As a result, the three-year statute would normally have accrued on or about July 6, 2015, and this case would be barred by the statute of limitations. However, under Washington's "discovery rule" the limitations period does not accrue until a plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the facts which give rise to his or her cause of action." *Id.* Plaintiffs contend they did not "discover" the claim until March 24, 2017, "at the earliest," or, in the alternative, that there are issues of fact which preclude summary judgment. *See Opposition*, docket no. 27 at 7. Corr Cronin contends that under the discovery rule, the statute of limitations commenced, at the latest, by June 2014. *See Reply*, docket no. 32 at 6. When a plaintiff discovers a claim, or in the exercise of reasonable diligence should have discovered a claim, is normally a question of fact. *Cawdrey*, 129 Wn. App. at 818. "But if reasonable minds could not differ, it is a question of law." *Id.* A "smoking gun" or conclusive proof is not required. *Beard v. King County*, 76 Wn. App. 863, 868, 889 P.2d 501 (1995). Rather, an injured claimant "who reasonably suspects that a specific wrongful act has occurred is on notice that legal action must be taken." *Id.* The Court concludes as a matter of law that reasonable minds cannot differ and that Plaintiffs' claim for legal malpractice against the Defendants accrued more

than three years before this action was commenced and is therefore barred by the statute of limitations.

Filings in Plaintiffs' bankruptcy proceedings show that even after Defendants' representation had ended and after *Hollystone v. Allstate* was settled, Plaintiffs were on notice of potential unresolved claims against Allstate. On June 28, 2014, Adams filed for Chapter 11 reorganization. In July and August 2014, Adams filed declarations asserting a "possible derivative claim . . . against Allstate Financial and/or John Michael, principal, for damages, conversions, embezzlement, larceny, and failure to account for business funds entrusted to Allstate Financial" the amount of which was "presently unknown and under investigation." Petrak Decl., docket no. 21, Exs. T-V. The declarations filed on July 30, 2014 (Ex. T) and August 26, 2014 (Ex. U) both refer to the Debtor's (Adams) schedule filed in the bankruptcy proceeding, Schedule B-21 and claims:

> . . . possible derivative claim of businesses listed on Schedule B for unknown periods of June of 2012 on, and in 2014 against Allstate Financial and/or John Michael, principal, for damages, conversion, embezzlement, larceny, and failure to account for business funds entrusted to Allstate Financial; amount of claims presently unknown and under investigation [such claim(s) affect[s] the valuation of Debtors' ownership interest in businesses listed herein] [value of claim "Unknown"]. . .

*Id.*, Ex. T, at 2. Again, on September 10, 2014, amended bankruptcy schedules filed by Adams claim as an asset a "possible derivative claim . . . against Allstate Financial and/or John Michael, principal, for damages, conversion, embezzlement, larceny, and failure to account for business funds entrusted to Allstate Financial," the amount of which was "presently unknown and under investigation." Petrak Decl., Ex. 60 at 8. Later in 2014, the bankruptcy Trustee moved to convert the case to Chapter 7, and in so moving argued

ORDER - 7

that the Plaintiffs had a potential "claim against Allstate Financial." *Id.*, Ex. 61 ¶ 8. The Trustee continued to list potential claims against Allstate in amended schedules filed on February 11, 2015. *Id.*, Ex. 62 at 9. On April 17, 2015, the Trustee filed a proof of claim in Allstate's bankruptcy for "tort business claims" for an uncertain amount, and explained that the Trustee was "trying to obtain information for the purpose of calculating the . . . estate claim." *Id.*, Ex. AA, at 1.[3]

Plaintiff's criminal defense counsel, David Smith, advised Plaintiffs on April 30, 2015 that time was running out to "undo the Hollystone v AFG/Barrett settlement agreement" and to "file a claim" against John Michael. *Id.*, Ex. 77, at 2. Smith also informed Plaintiffs that a "key strategy" for defending against criminal allegations would "involve proving that John Michael and [Allstate], after collecting the dues from the members of your gyms, did not remit the funds necessary to pay state taxes." *Id.*, Ex. 76 at 1. Smith encouraged Plaintiffs to cooperate with the civil Receiver, who wished to "develop similar and additional facts to pursue civil claims" against the same defendants. *Id.* To that end, Smith recommended "engag[ing] a forensic expert to review the evidence." *Id.* at 3. However, Plaintiffs did not contact such an expert until November of 2016. *Id.*, Ex. 83.

Plaintiffs' claim against Defendants is for legal malpractice based on advising Plaintiffs to settle *Hollystone v. Allstate* "without having conducted any discovery or forensic accounting analysis," and the resulting reputational and financial harm that

---

[3] This is the same type of information that was sought in the discovery requests directed to Allstate and its bank in the state court action that Plaintiffs now say Corr Cronin failed to obtain.

ORDER - 8

resulted from Sam Adams' criminal prosecution. Complaint, docket no. 1-1, ¶ 3.8. Plaintiffs were aware more than three years before this case was filed as to possible claims against Allstate notwithstanding their settlement and dismissal of *Hollystone v. Allstate*. That means that Plaintiffs were also on notice of the facts giving rise to the legal malpractice claim against Defendants more than three years prior to filing the Complaint in this action. That the forensic accountant Plaintiffs retained more than a year later believed more facts were necessary to evaluate and/or prove Allstate's wrongdoing, and that the accountant did not issue reports until March and May of 2017 does not compel a different conclusion. A legal malpractice claim in Washington accrues when a plaintiff has reason to know of any injury due to the attorney's alleged negligence. *See Huff v. Roach*, 125 Wn. App. 724, 729-30, 106 P.3d 268 (2005). Plaintiffs were aware that they might still have potential claims against Defendants more than three years before filing this action. Because they were aware of potential claims against Allstate and Barratt, Plaintiffs were also on notice that Corr Cronin's advice may have caused them injury more than three years before filing the malpractice claim against Corr Cronin.[4]

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendants' Motion for Summary Judgment, docket no. 20, is GRANTED. The Court will enter judgment in favor of Defendants dismissing the Complaint with prejudice.

---

[4] The Court need not reach Defendants' alternative argument regarding the uncollectability defense. As a result, Plaintiffs' request to strike material from Defendants' reply brief regarding that defense is denied as moot.

ORDER - 9

(2) Defendants' Motion for Judicial Notice, docket no. 24, is DENIED as moot.

(3) Plaintiffs' unopposed Request for Judicial Notice, docket no. 30, is GRANTED.

(4) Plaintiffs' request to strike material contained in Defendants' reply, docket no. 35, is DENIED as moot.

(5) Defendants' motion for summary judgment, docket no. 37, is STRICKEN as moot.

(6) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 28th day of June, 2019.

_____
Thomas S. Zilly
United States District Judge

ORDER - 10